Frank G. Long (#012245)
flong@dickinsonwright.com
J. Alex Grimsley (#019111)
Jagrimsley@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 N. Central Avenue, Suite 1400
Phoenix, Arizona 85004-4568
Phone: (602) 285-5000
Fax: (602) 281-5100
Firm Email: courtdocs@dickinsonwright.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cash Flow Management, LLC, a Delaware limited liability company, d/b/a Kinective, <br><br> Plaintiff, <br><br> v. <br><br> Kinecta Federal Credit Union, a federal credit union, <br><br> Defendant. | Case No. _____ <br><br><br> **Complaint for Declaratory Judgment** |

Plaintiff, Cash Flow Management, LLC, DBA Kinective ("Kinective" or "Plaintiff"), brings this Complaint for Declaratory Judgement arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 against Defendant Kinecta Federal Credit Union ("Kinecta" or "Defendant"), seeking a declaratory judgment that:

   A.  Plaintiff's use of the KINECTIVE name to identify Plaintiff's KINECTIVE-branded software and services for financial institution automation, workflow and document management, and transaction processing, is not likely to cause confusion among purchasers and prospective purchasers of Plaintiff's software and related services over whether those goods and services share an origination, association or

affiliation with Defendant's KINECTA-branded credit union services, and the parties may continue to co-exist in the market with each other's use of their respective trademarks;

      B.     Defendant's KINECTA Marks are not "famous" as defined in 15 U.S.C. § 1125(c)(2)(A); and

      C.     Plaintiff's use of Plaintiff's KINECTIVE Mark is not likely to cause dilution of Defendant's KINECTA Marks; and/or

      D.     The equitable doctrine of laches bars Defendant's claim that Plaintiff's use of Plaintiff's KINECTIVE Mark is reasonably likely to cause confusion over whether Plaintiff's software and services share an origination, association or affiliation with Defendant or its KINECTA-branded credit union services.

For its Complaint against the Defendant, Plaintiff alleges as follows:

## PARTIES

1. Plaintiff Cash Flow Management, LLC is a Delaware limited liability company with its principal place of business in Gilbert, Arizona.

2. Defendant Kinecta Federal Credit Union is, on information and belief, a federal credit union with its principal place of business in Manhattan Beach, California.

## JURISDICTION AND VENUE

3. This is an action arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4. This Court has jurisdiction over this matter pursuant to 15 U.S.C. §§ 1114 and 1121 and 28 U.S.C. §§ 1331 and 1338(a) in that it involves a federal action arising under the Lanham Act, complete diversity of citizenship exists, and the amount in controversy exceeds $75,000.

5. Plaintiff is a citizen of Arizona.

6. Defendant offers credit union services, including checking and savings account services, credit card services, loan and credit line services, insurance services, and wealth management services.

7. Defendant uses the domain name and website: <Kinecta.org>

8. On information and belief, Defendant offers its customer members access to its credit union services online and nationwide via the <Kinecta.org> domain name, as well as through a nationwide network of ATM's and shared branches.

9. This Court has personal jurisdiction over Defendant.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because, on information and belief, Defendant conducts business in this judicial district and/or purposefully availed itself of the privilege of conducting activities in Arizona, and the actions that give rise to this Complaint directly affect Plaintiff's business operations within this judicial district.

## GENERAL ALLEGATIONS

### Plaintiff's KINECTIVE Mark, Products and Services, and Domain Name

11. Plaintiff Kinective and its predecessors in interest offer, and have for many years offered, software, software services, and outsource service provider services that enable financial institutions, including banks and credit unions, to automate their processes, manage their documents and workflow, and facilitate backend transaction processing (the "KINECTIVE Suite of Software and Services").

12. Plaintiff is a business-to-business organization whose customers are banks, credit unions, fintech organizations, and related financial institutions that are seeking to implement software, software services, and middle and back-office services to enable branch automation, document and workflow management, and electronic transaction processing.

13. Since at least as early as June 2023, Plaintiff and its predecessors in interest merged and adopted the word KINECTIVE (the "KINECTIVE Mark") as trademark and began to identify the KINECTIVE Suite of Software and Services sold in U.S. commerce to the financial institutions that are Plaintiff's customers for that software and those services. Since then, Plaintiff has used its KINECTIVE Mark continuously in U.S.

commerce to identify an expanding array of Plaintiff's KINECTIVE Suite of Software and Services to its financial institution customers.

14. Plaintiff's use of the KINECTIVE Mark has been widespread and prominent. In 2023, certain of Plaintiff's KINECTIVE Suite of Software and Services, identified by the KINECTIVE Mark, were utilized by over 2,500 financial institutions across the U.S. Currently, more than 3,400 financial institutions, banks and credit unions nationwide are utilizing certain of Plaintiff's KINECTIVE Suite of Software and Services identified by the KINECTIVE Mark.

15. Plaintiff is a business-to business organization that directs its marketing and advertising efforts for its KINECTIVE Mark and KINECTIVE Suite of Software and Services solely toward its customers, which are banks, credit unions, fintech organizations, and related financial institutions.

16. Plaintiff owns and has operated since at least June 6, 2023 a website using the <Kinective.io> domain name (the "KINECTIVE Website").

17. Plaintiff uses KINECTIVE Mark on the KINECTIVE Website to advertise, market, and promote to financial institutions its KINECTIVE Suite of Software and Services.

18. Plaintiff uses the KINECTIVE Mark to promote the KINECTIVE Suite of Software and Services prominently on social media, including on (i) the @KinectiveBanking Facebook account, (ii) the @Kinective YouTube account, and (iii) the Kinective LinkedIn account.

19. Plaintiff further use the KINECTIVE Mark to promote regularly the KINECTIVE Suite of Software and Services at financial industry conferences and tradeshows. Indeed, since at least as early as June 2023, Plaintiff has attended dozens of such events to promote its KINECTIVE Suite of Software and Services identified by Plaintiff's KINECTIVE Mark.

20. Plaintiff has not offered, does not offer, and does not intend to offer credit union services or related services such as checking/savings account services, credit card

services, loan or line of credit services, insurance services, or wealth management services.

21. Plaintiff has not, does not, and does not intend to market or advertise its KINECTIVE Suite of Software and Services, whether under the KINECTIVE Mark or otherwise, directly to the general public that would or could include customers or members of credit unions or banks.

22. Where a financial institution has incorporated or utilized Plaintiff's KINECTIVE Suite of Software and Services, Plaintiff's KINECTIVE mark is not visible to the financial institution's own customers or members in any manner or at any time when such customers/members interact or transact with their financial institution.

23. The purchase and implementation of Plaintiff's KINECTIVE Suite of Software and Services within a financial institution requires a long lead-time. Indeed, sales cycles for Plaintiff's KINECTIVE Suite of Software and Services often last several months and include multiple interactions between Plaintiff and its potential financial institution customer. During this time, Plaintiff's financial institution customers, on information and belief, undertake a careful and deliberate review of Plaintiff and its KINECTIVE Suite of Software and Services before awarding any contract. Further, actual implementation of Plaintiff's KINECTIVE Suite of Software and Services within a financial institution typically requires several months of significant involvement with, and interaction between, the IT departments of both Plaintiff and its financial institution customers.

24. On information and belief, those financial institution professionals responsible for selecting, purchasing and implementing Plaintiff's KINECTIVE Suite of Software and Services are knowledgeable, sophisticated and exercise a high degree of care and diligence in making their decisions to purchase and implement Plaintiff's KINECTIVE Suite of Software and Services.

25. Plaintiff is the owner of U.S. Patent and Trademark Office ("PTO") Application Serial No. 98053063 for the KINECTIVE Mark shown on the accompanying Exhibit A (the "'063 Application"), which Plaintiff filed with the PTO on June 21, 2023.

26. On information and belief, the relevant consuming public associates the KINECTIVE Mark as identifying the KINECTIVE Suite of Software and Services originating from a single source, namely Plaintiff.

**Defendant's Services and its KINECTA Marks**

27. Defendant claims to be the owner of:

    a. PTO Registration No. 2592584 (the "'584 Registration") for KINECTA as a trademark for "Consumer and small business financial services, namely credit union loan services, credit union deposit services, credit union insurance brokerage services in the field of property and casualty, homeowners, renters, auto, life and long term care, and credit union investment consultation, credit union financial planning" (the "KINECTA Mark"), issued by the PTO on July 9, 2002.

    b. PTO Registration No. 3273485 (the "'485 Registration") for:



as a trademark for "Credit Union services; financial services, namely banking, individual retirement accounts, consumer and mortgage lending, securities brokerage, financial planning, and life, property and casualty insurance agency and brokerage services" (the "KINECTA Design Mark"), issued by the PTO on August 7, 2007.

The foregoing KINECTA Mark and KINECTA Design Mark herein collectively referred to as the "KINECTA Marks". Copies of the registration certificates for the KINECTA Marks are attached within Exhibit B.

28. On information and belief, Defendant currently offers, and has only ever offered, credit union services to member customers, including checking/savings account services, credit card services, loan and credit line services, insurance services, and wealth management services (the "KINECTA Credit Union Services").

29. On information and belief, Defendant now uses, and has only ever used, the KINECTA Marks to identify the KINECTA Credit Union Services.

**Defendant's Interactions with Plaintiff**

30. Defendant currently is, and has been a customer of Plaintiff for at least years.

31. In or about June 2023, Plaintiff announced its adoption of the KINECTIVE Mark for the KINECTIVE Suite of Software and Services via email to its then existing customers, including Defendant.

32. Defendant uses, and has used, certain of the KINECTIVE Suite of Software and Services identified by the KINECTIVE Mark.

33. By virtue of the business relationship between the parties, Defendant and Plaintiff are, and have been, engaged in an ongoing commercial relationship involving at least multiple emails over the span of more than a year wherein Plaintiff used the KINECTIVE Mark to identify certain of the KINECTIVE Suite of Software and Services.

34. In or about July 2024, Plaintiff invoiced Defendant for certain of the KINECTIVE Suite of Software and Services. These invoices prominently featured the KINECTIVE Mark.

35. In our about July 2024, at least one Defendant's employees registered with Plaintiff's customer support portal for the KINECTIVE Suite of Software and Services. Plaintiff's customer support portal prominently features the KINECTIVE Mark.

36. In or about October 2024, Plaintiff invited several of Defendant's employees – including its then CEO, Senior Vice President, and Information Technology analysts, to a KINECTIVE-branded cocktail/reception party that Plaintiff held at an industry conference in October 2024.

37. Prior to February 21, 2025, neither Defendant nor anyone associated with Defendant expressed to Plaintiff, or anyone connected to Plaintiff, any concern with Plaintiff's use of its KINECTIVE Mark to identify the Suite of Software and Services.

38. On or about February 24, 2025, Plaintiff received a letter from Defendant's counsel dated February 21, 2025, wherein Defendant demanded that Plaintiff immediately cease use of its KINECTIVE Mark and withdraw the pending '063 Application.

39. Defendant sent this demand letter to Plaintiff mere days prior to the March 2, 2025 start of the *Governmental Affairs Conference 2025*, an annual financial institution industry conference held in Washington D.C. for credit union professionals to meet and engage with lawmakers. As it has dozens of times previously with other conferences, Plaintiff planned to attend this industry conference to promote its KINECTIVE-branded Suite of Software and Services.

40. Defendant's February 21, 2025 letter, however, demanded that Plaintiff agree, no later than February 28, 2025, that Plaintiff would refrain from all use of the KINECTIVE Mark at the Conference, and refrain also from any further use of the KINECTIVE name for Plaintiff's suite of software and services and to withdraw '063 Application.

41. Defendant knows, or should know, that Plaintiff cannot comply with such demand in any event as Conference organizers have already produced printed material and other content in which Plaintiff's KINECTIVE mark would be featured, and the retraction of which Plaintiff cannot control at such late notice.

42. Defendant's demands to Plaintiff are based on Defendant's claims that its use of its KINECTA Marks for the KINECTA Credit Union Services and Plaintiff's use

of the KINECTIVE Mark to identify the KINECTIVE Suite of Software and Services will "create a strong likelihood of confusion in the marketplace."

43. Defendant further alleges that Plaintiff's KINECTIVE Mark "is diluting the distinctive quality" of the KINECTA Marks.

44. Defendant also avers that Plaintiff's continued use of the KINECTIVE Mark "is likely to lead members of the public to mistakenly believe that [Kinective's] . . . business operations and the services it offers may be legitimately connected with, or sponsored or approved by [Kinecta]."

45. Plaintiff disputes Defendant's assertions for numerous reasons.

46. First, contrary to Defendant's assertion, Plaintiff's use of its KINECTIVE Mark is not likely to cause confusion with Defendant's KINECTA Marks.

47. Second, contrary to Defendant's assertion, Plaintiff's KINECTIVE Mark is not likely to dilute the distinctiveness of Defendant's KINECTA Marks.

48. Furthermore, given the prior and ongoing business relationship between the parties and the length of time during which Defendant has delayed taking any action to question, or even challenge, Plaintiff's widespread use of its KINECTIVE Mark with the KINECTIVE Suite of Software and Services, and the prejudice Plaintiff would unfairly suffer if Defendant's trademark infringement and/or dilution claims were allowed to enjoin Plaintiff's use, Defendant's claims are barred by the equitable doctrine of laches.

49. The demands and threats in Defendant's letter has caused in Plaintiff an apprehension of imminent suit. Plaintiff, therefore, brings this action to protect its rights and its business by seeking declaratory relief that will promptly and finally resolve the existing dispute between the parties concerning their respective rights with respect to the different marks used by each of the parties as trademarks to identify their respective goods.

**FIRST CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT FOR NO LIKELIHOOD OF CONFUSION)**

50. Plaintiff re-alleges and incorporates by reference all allegations contained in the Complaint as though fully set forth herein.

51. Plaintiff is entitled to a declaration that Plaintiff's use of the KINECTIVE Mark for the KINECTIVE Suite of Software and Services does not give rise to any reasonable likelihood of confusion among purchasers, and potential purchasers, of that software and services over whether Plaintiff's software and services share an origination, association or affiliation with Defendant's KINECTA-branded credit union services.

52. An evaluation of the likelihood of confusion factors strongly favors Plaintiff:

**The Marks Are Not Strong**

53. Defendant's KINECTA Marks are conceptually weak marks.

54. Defendant's KINECTA Marks also are commercially weak.

55. On information and belief, there are several different businesses using in PTO registered or unregistered marks containing terms that are plays on or misspellings or variations of the words "connect", "connection," "kinetic," and the like, alone or in combination with other terms and in singular, plural or possessive tense within the financial and financial institution products and services field. See a sampling attached within Exhibit C. This reduces the commercial strength of Plaintiff's KINECTA Marks.

56. The relative weakness of the marks weighs against any reasonable likelihood of confusion among purchasers, and potential purchasers, of the KINECTIVE Suite of Software and Services over whether Plaintiff's suite of software and services share an origination, association or affiliation with Defendant's KINECTA-branded credit union services.

**The Marks Are Not Similar**

57. The challenged KINECTIVE Mark is different from the KINECTA Mark and KINECTA Design Mark in sight, sound, meaning and overall commercial impression.

58. The difference between the marks weighs against any reasonable likelihood of confusion among purchasers, and potential purchasers, of the KINECTIVE Suite of

Software and Services over whether Plaintiff's suite of software and services share an origination, association or affiliation with Defendant's KINECTA-branded credit union services.

**The Commercial Activities Are Not Competitive**

59. The KINECTIVE Suite of Software and Services and the KINECTA Credit Union Services are fundamentally different, targeted to different classes of consumers, and the parties' respective goods and services are not in any way competitive.

60. Defendant is a business-to-consumer organization that, on information and belief, directs its KINECTA Credit Union Services toward those members of the general public seeking credit union services, such as checking/savings accounts, credit cards, loans and lines of credit, insurance, and/or wealth management services.

61. Plaintiff is a business-to-business entity that directs its KINECTIVE Suite of Software and Services solely toward financial institutions seeking to streamline and automate their backend services, workflow, document management, electronic transactions, and other related electronic aspects of their business management.

62. There is no meaningful overlap in the marketplace between Plaintiff's sales of Plaintiff's KINECTIVE Suite of Software and Services and Defendant's sales of Defendant's KINECTA Credit Union Services.

63. The difference between the commercial activities strongly weighs against any reasonable likelihood of confusion among purchasers, and potential purchasers, of the KINECTIVE Suite of Software and Services over whether Plaintiff's suite of software and services share an origination, association or affiliation with Defendant's KINECTA-branded credit union services. .

**Marketing Channels Are Not Similar**

64. On information and belief, Defendant is a business-to-consumer organization that markets and promotes its KINECTA Credit Union Services directly to

those members of the general public seeking to avail themselves of credit union services, such as such as checking/savings accounts, credit cards, loans and lines of credit, insurance, and/or wealth management services.

65. Plaintiff, on the other hand, is a business-to-business entity that markets and promotes its KINECTIVE Suite of Software and Services, to financial institutions, where the decision makers for purchasing Plaintiff's KINECTIVE Suite of Software and Services are the officers and Information Technology professionals of those businesses.

66. The target consumers for the KINECTIVE Suite of Software and Services and the KINECTA Credit Union Services are fundamentally different and do not overlap in any meaningful way.

67. The different retail and marketing channels used by the parties weighs strongly against any reasonable likelihood of confusion among purchasers, and potential purchasers, of the KINECTIVE Suite of Software and Services over whether Plaintiff's suite of software and services share an origination, association or affiliation with Defendant's KINECTA-branded credit union services.

**Relevant Purchasers Exercise More Than Ordinary Care**

68. The relevant purchasers of Plaintiff's KINECTIVE Suite of Software and Services are the officers and Information Technology professionals of financial institutions.

69. The costs to purchase and implement Plaintiff's KINECTIVE Suite of Software and Services are significant and technical requirements require a long-lead time for implementation and integration of the KINECTIVE Suite of Software and Services into any financial institution that purchases the software and/or related services.

70. On information and belief, those financial institution professionals responsible for selecting, purchasing and implementing Plaintiff's KINECTIVE Suite of Software and Services are knowledgeable, sophisticated and exercise a high degree of care

and diligence in making their decisions to purchase Plaintiff's KINECTIVE Suite of Software and Services.

71. On information and belief, those financial institution professionals who are responsible for selecting, purchasing and implementing Plaintiff's KINECTIVE Suite of Software and Services are likely to know, when making those decisions, that Plaintiff's KINECTIVE Suite of Software and Services are not sold or offered for sale, nor have they ever been sold or offered for sale, by Defendant or the same source as the credit-union services sold under the KINECTA Marks.

72. The sophistication of, and high degree of care exercised by, the relevant purchasers of Plaintiff's KINECTIVE Suite of Software and Services weighs strongly against any reasonable likelihood of confusion among purchasers, and potential purchasers, of the KINECTIVE Suite of Software and Services over whether Plaintiff's suite of software and services share an origination, association or affiliation with Defendant's KINECTA-branded credit union services.

## There Are No Instances of Actual Confusion

73. The KINECTIVE Mark and KINECTA Marks have co-existed in the marketplace since at least June 2023.

74. Despite being used contemporaneously for more than one and a half years, Plaintiff is not aware of a single instance of confusion by anyone over whether Plaintiff's KINECTIVE Mark and KINECTIVE Suite of Software and Services are related in any way to the KINECTA Marks and KINECTA Credit Union Services.

75. The absence of even a single instance of actual confusion, despite the length of time during which the parties' respective products/services and marks have co-existed in the marketplace and in the parties' business relationship, weighs against a reasonable likelihood of confusion among purchasers, and potential purchasers, of the KINECTIVE Suite of Software and Services over whether Plaintiff's suite of software and services

share an origination, association or affiliation with Defendant's KINECTA-branded credit union services.

### No Intent to Copy

76. Given the differences in the parties' marks and commercial activities, it is obvious that Plaintiff did not adopt its KINECTIVE Mark with an intent to copy, or otherwise benefit from, the KINECTA Marks.

77. The absence of any intent to copy weighs against a reasonable likelihood of confusion among purchasers and prospective purchasers of Plaintiff's suite of software and services over whether those software and services share an origination, association or affiliation with Defendant's KINECTA-branded credit union services.

### No Likelihood of Expansion

78. On information and belief, Defendant has no *bona fide* intent to expand its use of its KINECTA Marks to identify any software or related services for financial institutions.

79. Plaintiff has no intent to expand its use of the KINECTIVE Mark to identify credit union services.

80. There is no strong possibility that Plaintiff or Defendant will expand their commercial offerings to compete directly with the products and/or services of the other party.

81. The absence of any strong possibility of such expansion weighs against any reasonable likelihood of confusion.

82. Considering all of the factors, Plaintiff is entitled to a declaration that Plaintiff's use of its KINECTIVE Mark and Defendant's use of its KINECTA Marks is not likely to give rise to any reasonable likelihood of confusion among purchasers, and potential purchasers, of the KINECTIVE Suite of Software and Services over whether

Plaintiff's software and services share an origination, association or affiliation with Defendant's KINECTA-branded credit union services.

## SECOND CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT THAT THE KINECTA MARKS ARE NOT FAMOUS)

83. Plaintiff re-alleges and incorporates by reference all allegations contained in the Complaint as though fully set forth herein.

84. As of August 2024, Defendant's KINECTA credit union was not among the top 10 credit union brands in the US according to *US News and World Report*. See attached Exhibit D. Similarly, as of April 2023, Defendant's KINECTA credit union was not among the top 10 credit union brands in the US according to *FinTech Magazine*. See *id.*

85. On information and belief, regardless of the extent of Defendant Kinecta's advertising, publicity or utilization of its KINECTA Credit Union Services, which is presently unknown to Plaintiff, the KINECTA Marks are not widely recognizable to the general consuming public of the United States as a designation of the sole source of credit union services.

86. On information and belief, regardless of the extent of Defendant Kinecta's advertising, publicity or utilization of its KINECTA Credit Union Services, which is presently unknown to Plaintiff, the consuming public, when encountering the KINECTA Marks, does not associate the marks, initially or otherwise, with credit union services.

87. On information and belief, regardless of the extent of Defendant Kinecta's advertising, publicity or utilization of its KINECTA Credit Union Services, which is presently unknown to Plaintiff, the name KINECTA is not a household name or part of the national consciousness.

88. Plaintiff is entitled to a declaration that Defendant's KINECTA Marks are not "famous" as defined in 15 U.S.C. § 1125(c)(2)(A).

## THIRD CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT THAT THERE IS NO DILUTION)

89. Plaintiff re-alleges and incorporates by reference all allegations contained in the Complaint as though fully set forth herein.

90. Plaintiff's KINECTIVE Mark is not sufficiently similar to Defendant's KINECTA Marks to cause dilution by blurring of Defendant's KINECTA Marks.

91. Defendant's KINECTA Marks were not widely recognized by the general consuming public when Plaintiff first used in U.S. commerce its KINECTIVE Mark to identify the KINECTIVE Suite of Software and Services.

92. Defendant's KINECTA Marks were not widely recognized by the general consuming public when Plaintiff filed with the PTO the '063 Application for the KINECTIVE Mark.

93. Consumers, including purchasers and potential purchasers of Defendant's credit-union services, are not likely to associate Plaintiff's KINECTIVE-branded software and services with Defendant or its KINECTA-branded credit union services.

94. For these reasons, Plaintiff is entitled to a declaration that Plaintiff's use of its KINECTIVE Mark is not likely to cause dilution by blurring of Defendant's KINECTA Marks.

## FOURTH CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT THAT CLAIM BARRED BY LACHES)

95. Plaintiff re-alleges and incorporates by reference all allegations contained in the Complaint as though fully set forth herein.

96. Defendant should be barred, by the equitable doctrine of laches, from any relief based on those claims due to Defendant's lack of diligence in asserting its claims against Plaintiff and the prejudice that Plaintiff would otherwise unfairly suffer if Defendant's claims are used to restrain Plaintiff's continued use of the KINECTIVE Mark for Plaintiff's KINECTIVE Suite of Software and Services.

97. Plaintiff's KINECTIVE Mark and KINECTIVE Suite of Software and Services and Defendant's KINECTA Marks and KINECTA Credit Union Services have co-existed in the market since at least June 2023.

98. Plaintiff filed its application for PTO registration of the KINECTIVE Mark on June 21, 2023.

99. Defendant currently is, and has been for several years, a customer of Plaintiff for at least years.

100. In or about June 2023, Plaintiff announced its adoption of the KINECTIVE Mark for the KINECTIVE Suite of Software and Services via email to its then existing customers, including Defendant.

101. Defendant uses, and has used, certain of the KINECTIVE Suite of Software and Services identified by the KINECTIVE Mark.

102. On information and belief, and by virtue of the business relationship between the parties, Defendant knew, or in the exercise of reasonable diligence should have known, of Plaintiff's use of the KINECTIVE Mark for at least certain of the KINECTIVE Suite of Software and Services since at least as early as early as November 2023.

103. If Defendant had notified Plaintiff promptly of Defendant's claims of infringement and/or dilution, Plaintiff would not have spent the considerable and continuing sums of money involved in building the KINECTIVE brand and developing and expanding Plaintiff's line of KINECTIVE Suite of Software and Services without first resolving Defendant's infringement and dilution claims.

104. Plaintiff announced its adoption of the KINECTIVE mark for its products and services in June 2023 through an email announcement to Plaintiff's customers, including Defendant.

105. Plaintiff also began using the <Kinective.io> domain name that same month and began using that domain name to advertise Plaintiff's products and services as the KINECTIVE products and services.

106. Plaintiff then formally switched its email addresses to @kinective.io in November 2023.

107. Plaintiff also began in November 2023 prominently featuring the KINECTIVE mark in all email communications between Plaintiff and its customers, including Defendant.

108. In or about July 2024, Plaintiff rebranded on Plaintiff's <Kinective.io> website and other marketing materials various existing products to variations on the KINECITVE brand name, including specifically the KINECTIVE INSIGHT™, KINECTIVE ACCESS™, and KINECTIVE LINK & HUB™ brand names.

109. In or about July 2024, Plaintiff invoiced Defendant for certain of the KINECTIVE Suite of Software and Services. These invoices prominently featured the KINECTIVE Mark.

110. In or about July 2024, at least one Defendant's employees registered with Plaintiff's customer support portal for the KINECTIVE Suite of Software and Services. Plaintiff's customer support portal prominently features the KINECTIVE Mark.

111. In or about October 2024, Plaintiff invited several of Defendant's employees – including its then CEO, Senior Vice President, and Information Technology analysts, to a KINECTIVE-branded cocktail/reception party that Plaintiff held at an industry conference in October 2024.

112. If, at any time during the time that Plaintiff announced and introduced and developed awareness of the KINECTIVE brand name, Defendant had objected to Plaintiff's use of the KINECTIVE name for any of Plaintiff's products or services, Plaintiff would have had little incentive to invest in the KINECTIVE brand name and its awareness among its customers and potential customers without first resolving Defendant's infringement and dilution claims.

113. In the absence of any objection by Defendant to Plaintiff's use of the KINECTIVE name for any of Plaintiff's products or services, Plaintiff invested heavily in building the KINECTIVE name as the identity of Plaintiff's business name and the brand

name of Plaintiff's suite of products and services to become a leading brand in Plaintiff's industry.

114. Defendant's delay in notifying Plaintiff was unreasonable for several reasons.

115. First, Defendant's KINECTA Marks are not strong marks that have a reputation beyond Defendant's specific credit union services.

116. In addition, Defendant was not diligent in notifying Plaintiff of Defendant's intent to assert its purported trademark rights against Plaintiff's use of the KINECTA name.

117. Further, there is no evident harm to consumers, or the purchasers and prospective purchasers of Plaintiff's products, if Defendant's trademark claims are denied.

118. Moreover, Defendant was fully aware and not in good faith ignorance of Plaintiff's adoption, introduction and development of customer awareness of the KINECTIVE brand name for Plaintiff's products and services.

119. Defendant and Plaintiff are not competitors and do not offer competing products or services.

120. The harm to Plaintiff, if Defendant's trademark claims are enforced, would be severe and manifestly unfair.

121. During Plaintiff's delay in bringing challenge, Plaintiff developed an identity in KINECTIVE as a business as well as a brand name for Plaintiff's suite of software and services.

122. Defendant's delay in asserting its claims of infringement and dilution unfairly prejudiced Plaintiff because Plaintiff relied on the absence of any such claims in spending the considerable resources involved in building the KINECTIVE name as the identity of Plaintiff's business name and the brand name of Plaintiff's suite of products and services.

123. Plaintiff thus is entitled to declaration that Defendant's claims of infringement and dilution are barred by the equitable doctrine of laches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment in Plaintiff's favor as follows:

1. A declaration that Plaintiff's use of its KINECTIVE Mark with the KINECTIVE Suite of Software and Services is not reasonably likely to cause confusion among purchasers and prospective purchasers of Plaintiff's software and related services over whether those goods and services share an origination, association or affiliation with Defendant's KINECTA-branded credit union services.

2. A declaration that Defendant's KINECTA Marks are not "famous" as defined in 15 U.S.C. § 1125(c)(2)(A).

3. A declaration that Plaintiff's use of its KINECTIVE Mark is not likely to cause dilution by blurring of Defendant's KINECTA Marks.

4. A declaration that Defendant's claims of infringement and/or dilution are or is barred by the equitable doctrine of laches.

5. An award to Plaintiff of such other and/or further relief as the Court deems just and equitable under the circumstances.

Dated: February 28, 2025

DICKINSON WRIGHT PLLC

*/s/ Frank G. Long*
Frank G. Long
J. Alex Grimsley
**DICKINSON WRIGHT, PLLC**
1850 N. Central Avenue, Suite 1400
Phoenix, Arizona 85004-4568
*Attorneys for Plaintiff*

4901-7310-0576 v3 [107855-8]